**UNITED STATES of America**

v.

**Benjamin DUMAS, Jerry Slattery, James Palagonia.**

**Crim. No. 81–106.**

United States District Court,
D. New Jersey.

Feb. 17, 1982.

William W. Robertson, U. S. Atty. by Terence P. Flynn, Asst. U. S. Atty., Newark, N. J., for United States.

John F. McMahon, Federal Public Defender by David A. Ruhnke, Asst. Federal Public Defender, Newark, N. J., for defendant Benjamin Dumas.

## MEMORANDUM ORDER

BIUNNO, District Judge.

Benjamin Dumas pleaded guilty to conspiracy (Count 1) and wire fraud of $25,380 (Count 2). The underlying activity involved was a swindle. Victims were solicited to make investments in precious metals and foreign currencies, and parted with their funds in exchange for worthless confirmations of non-existent transactions and the like. The aggregate sum of which the victims were fleeced by the group was of the order of $250,000. or more.

The activities became a federal case with jurisdiction in this court because of the use of the mails and wire communications for carrying out the swindle.

Dumas was sentenced after plea of guilty on the two counts mentioned to 3 years imprisonment on Count 1. Imposition of sentence was suspended on Count 2 and he was put on probation for 5 years to follow release from parole on Count 1. He is confined to the Federal Prison Camp at Allenwood (Montgomery, Pa.). He has filed within time a motion for reduction of sentence under Rule 35. This was noticed for February 8, 1982, at which time the court heard oral argument but reserved because a supplemental affidavit filed February 1, 1982 had not reached chambers or the Assistant U. S. Attorney.

■ The court has reviewed all the papers in the case, including the supplemental affidavit, and finds that the sentence imposed was a careful balance between the needs of punishment, deterrence of defendant and of others who might be tempted to duplicate his misconduct on the one hand, and all mitigating factors (including the eventual willingness to plead, albeit somewhat hesitant or reluctant) on the other.

On the AO Form 236, the sentencing objectives noted were "punishment plus inducement to future good behavior". The 3-year sentence, a relatively mild one for the magnitude of the underlying swindle, should indelibly etch in Dumas' mind the discomforts and restraints of prison life, especially at a work camp like Allenwood which has no prison walls. Its atmosphere is much more like an army base than a penitentiary like Lewisburgh.

The impression it makes should serve as a reminder, during the 5 years of probation, of the vital need to refrain from any kind of misconduct, since an infraction of the probation conditions can lead to the imposition of sentence on Count 2, which can be for as long as 5 years. This ought to be a strong inducement to future good behavior.

The second item, asking for comment on treatment needs, is that: "Defendant is aimless and unmotivated". This evaluation stands out from his personal history.

His father, who is Chairman of the Music Department at Southeast Missouri University, describes him as being inclined to be pleasure oriented and motivated by self-gratification, acquiring material things without regard to the effect on others, including his family. Military training in the Navy evidently did not change his attitudes. He had difficulty conforming to parental expectations and family rules, with occasional confrontations when he would "leave home" for short periods.

Although he scored more than adequately on two standard I.Q. tests, he finished high school with a lackadaisical score of 2. on a scale of 4. He enrolled in college in the Fall of 1972 but withdrew before Christmas after failing two courses and being placed on academic suspension.

Early in 1973 he enlisted in the Navy and was honorably separated 4 years later. His military records were not supplied but his criminal record shows an arrest in Jacksonville, Fla. for robbery with a toy gun, on which adjudication was withheld and 5 years' probation imposed. There is a string of motor vehicle offenses such as following too closely, speeding, driving without a valid driver's license.

Just before the indictment here was filed, he was arrested in Little Falls, N. J. on charges of driving without a license, driving without valid registration, driving without insurance, driving under the influence of alcohol and possession of marijuana (less than 25 grams). On one occasion he failed to appear and a bench warrant issued. He was arrested and released for hearing a week later, but again failed to appear and another bench warrant issued. He eventually appeared voluntarily soon after having pleaded guilty in this case and before sentence, and pleaded guilty to all charges. He was fined a total of $920 including court costs, and was committed on failure to pay the fine. Two days later a friend paid the fine in cash and secured his release.

His employment record is desultory. For a while after high school he worked part time as a clothing salesman at $1.60 an hour plus commissions. He was discharged for failure to show up for work. After his Navy service, he worked as a laborer for a

plastics company in Missouri until the work he was hired for had ended. He then worked as a route salesman for a barber supply company in Missouri for about a year, at $150. a week. His employer said he was a fair worker with good qualities but was irresponsible, and the job ended by mutual agreement.

After that, he was employed by an investment company located in Texas, working at an office in New Jersey. In this job he evidently learned enough about commodities trading to start up the swindle with his associates that led to his indictment, plea and conviction here.

Dumas' letter to his lawyer, submitted with the supplemental affidavit complains that the work schedule at Allenwood prevents him from studying foreign languages, such as French. He cannot leave the camp to attend a local college. He has been evaluated to serve 24 months and 17 days of his 3 year sentence. All of this, he is convinced, is not what was intended at sentence.

■ Complaints about parole decisions, of course, cannot be heard here under § 2255, but can only be heard in the District where he is confined, and then only after exhausting administrative review. His attitude is displayed by his refusal to sign the form notifying him of his classification as a Central Inmate Monitoring case. The staff is obliged to provide him with notice so that he can request an administrative remedy, and his signature would do no more than record the fact that he received notice. Although he refused to sign, he has obviously received notice because he supplied a copy with his papers.

His interest in French strikes the court as nothing more than an attempt to apply his swindle techniques here. His high school grades, coupled with his academic failure at college, hardly point to a career in foreign languages. The novel by Alexandre Dumas, the elder, "The Count of Monte Cristo", does give a fictional account of Edmond Dantes who, while imprisoned, learned of a secret treasure buried on the island of Monte Cristo, which he eventually locates

and so lives out his life as the mysterious Count. But it is not necessary to study French to read it. There is an English translation.

It is important, of course, that Dumas not be discouraged by his prison service. He must learn from it the importance of honest work, even manual labor, and of adhering to rules he may not like. This is important, not only for society but also for him, because after he is released from parole he faces 5 years on probation. He will then be in his own control. If he has not learned from the hard school of prison by that time, he will be in trouble here, because the slightest infraction, even as late as the last day of his probation, puts him in peril of being sentenced to another 5 years in jail.

Serving a jail sentence, even at Allenwood, is not easy. It is not intended to be. Dumas must learn to adjust to what prison life is. He cannot expect to have his way or look for sympathy when none is due. Most of all, he must learn to stop trying to "con" others. If he does not, the court doubts he will complete his 5 year probation term successfully.

The motion is denied.

SO ORDERED.